UNITED STATES FIDELITY & GUARANTY COMPANY, Appellant,

v.

Morris E. GOODSON, Appellee.

No. 8560.

Court of Civil Appeals of Texas, Texarkana.

June 20, 1978.

Rehearing Denied July 25, 1978.

Rex A. Nichols, Nichols & Parker, Longview, for appellant.

Bascom Perkins, Perkins & Perkins, Mount Pleasant, for appellee.

CORNELIUS, Chief Justice.

Appellant, United States Fidelity and Guaranty Company, presents here the single contention that the judgment of the district court awarding appellee, Morris E. Goodson, worker's compensation benefits for total and permanent disability must be reversed because the evidence was insufficient as a matter of law to support the court's finding that, at the time appellee received his injury, he was an employee of the insurance subscriber, James Dillard.[1]

Appellant's point that the evidence was insufficient as a matter of law constitutes a "no evidence" point. *Airway Insurance Co. v. Hawk's Flite Center, Inc.*, 534 S.W.2d 878 (Tex.1976). In considering such a point, we must view the evidence in the light most favorable to appellant's contentions, disregarding all adverse or conflicting evidence, and if we find any evidence of probative value supporting the district court's finding, the judgment must be affirmed. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965). The evidence, tested by the principles noted, reveals that James Dillard was in the business of constructing residential and commercial buildings in and near Mount Pleasant, Texas. He was also a part owner of the Savemore Building Supply Company of Mount Pleasant. In the fall of 1975, Dillard agreed to construct a residence for Rex Jones. He testified that, although at other times previously he had used employees of his own in his construction business, at the time he built the Jones house he had ceased doing business through employees, because he was unable to spend the necessary time to supervise them, and instead he subcontracted all the work to independent contractors. Separate contracts were negotiated for the plumbing, electrical, concrete, brick and painting work. The carpentry work was given to W. A. Moss by oral contract. Moss bid the work on a square foot basis for a contract price of $4,270.00. Dillard furnished all the materials for the carpentry work from the Savemore Building Supply Company, but Moss had his own tools and used them, except that Dillard on occasions loaned him an air compressor, a tractor and a transit. Dillard also testified that he hardly knew Morris E. Goodson, did not hire him to work on the Jones house, and did not pay his wages or carry him on his records as an employee for income tax, social security or any other purpose. Neither was W. A. Moss carried as an employee for such purposes, and he was paid only his bid contract price in periodic installments as the work progressed. W. A. Moss supported Dillard's testimony, asserting that he was not an employee, but was an independent contractor who bid the carpentry work for the Jones house on a square foot basis. He employed his son and appellee Goodson, who was distantly related to him, as his helpers. He agreed to pay appellee wages of $5.00 per hour and paid him directly. Appellee testified that Moss alone approached him and made the deal with him to come to work on the house; that he was led to believe that Moss was subcontracting the carpentry work for Dillard, but that he now felt that Moss was "the foreman" out there and that "I was working for Mr. Moss and Mr. Dillard;" that he was paid directly by Moss; and that he had never received any compensation or other benefits from Dillard.

There can be no liability under the worker's compensation law unless as the statute prescribes, there is a contract for

---

1. Trial was to the court without a jury.

hire, either expressed or implied, between two parties—the claimant and the subscriber. Tex.Rev.Civ.Stat.Ann. art. 8309, Sec. 1; 62 Tex.Jur.2d, Workmen's Compensation, Sec. 29, p. 563, and cases there cited. The contract must be one which creates the relation of master-servant rather than that of independent contractor-contractee. *Lowry v. Anderson-Berney Bldg. Co.,* 139 Tex. 29, 161 S.W.2d 459 (1942); 62 Tex. Jur.2d, Workmen's Compensation, Sec. 39, pp. 575–576. And the burden of establishing his relationship as an employee of the subscriber is upon the claimant. *Industrial Indemnity Exchange v. Southard,* 138 Tex. 531, 160 S.W.2d 905 (1942).

The essential inquiry here is not whether appellee was an employee or an independent contractor. The record clearly supports the conclusion that appellee was an employee. The decisive question is whether he was an employee of Dillard, the subscriber, or of Moss.

■ Numerous circumstances are relevant in determining the existence of an employer-employee relationship, such as the right to hire and discharge, the obligation to pay wages, the carrying of the worker on the social security and income tax withholding rolls, and the furnishing of tools, but the ultimate and decisive test is the right of the alleged employer to control the details of the worker's performance. It is undisputed that appellee was actually hired by Moss, rather than Dillard, to perform work on the Jones house, and that he had none of the other formal relations with Dillard as are usual in an employer-employee relationship. Therefore, to support a finding that appellee was an employee of Dillard so as to be entitled to worker's compensation benefits provided by his policy, there must have been either (1) evidence that Moss, rather than being an independent contractor, was an employee or agent of Dillard with expressed or implied authority to hire other

employees for Dillard, and that he hired appellee as such an employee,[2] or (2) evidence of such control and direction of the details of appellee's work by Dillard, or other evidence of an employer-employee relationship between them, as would raise an inference that appellee thus became Dillard's own employee, either through an ordinary implied contract of employment[3] or by virtue of the legal doctrine of borrowed servant.

■ A finding of the first alternative is precluded by the undisputed evidence in the record. There is a complete absence of any evidence or inference that Moss was an employee of Dillard's. All of the testimony was that he was an independent contractor. There was no evidence of any exercise of control or right of control on the part of Dillard over the work of Moss, except the general type of supervision which any general contractor must have over his subcontractors in order to see that the work is done in accordance with the plans and in a good and workmanlike manner. That type of supervision does not constitute evidence of an employer-employee relation. *Continental Insurance Company v. Wolford,* 526 S.W.2d 539 (Tex.1975); *Anchor Casualty Company v. Hartsfield,* 390 S.W.2d 469 (Tex.1965); *Industrial Indemnity Exchange v. Southard,* supra; *Goodnight v. Zurich Insurance Company,* 416 S.W.2d 626 (Tex. Civ.App. Dallas 1967, writ ref'd n.r.e.); *Travelers Ins. Co. v. Ray,* 262 S.W.2d 801 (Tex.Civ.App. Eastland 1953, writ ref'd). Even if a finding that Moss was Dillard's employee could be justified, there is still no hint in the evidence that he occupied such a position as to have either the expressed or the implied authority to hire other employees for Dillard. In the absence of such authority, his engagement of appellee as a helper would not make appellee an employee of Dillard's. *Goodnight v. Zurich Insurance Company,* supra; *Travelers Insurance*

**2.** *Travelers Insurance Company v. Arnold,* 378 S.W.2d 78 (Tex.Civ.App. Dallas 1964, no writ); *Maryland Casualty Co. v. Scruggs,* 277 S.W. 768 (Tex.Civ.App. Amarillo 1925, writ ref'd); *Traders and General Insurance Co. v. May,* 168

S.W.2d 267 (Tex.Civ.App. Amarillo 1943, writ ref'd w. o. m.).

**3.** *Halliburton v. Texas Indemnity Insurance Co.,* 147 Tex. 133, 213 S.W.2d 677 (1948).

*Company v. Brown,* 395 S.W.2d 701 (Tex. Civ.App. Texarkana 1965, writ ref'd n. r. e.).

Neither will the record support a finding of the second alternative—that by virtue of Dillard's exercise of, or right to exercise, control over the details of appellee's work, or the existence of other indicia of the employer-employee relationship, appellee could be considered Dillard's employee. The only evidence in the record upon which appellee relies to show control of details is testimony that when appellee was laying out the location of the house on the lot, Dillard was present and told appellee to move it back five or six feet so as to improve the stability of the house and minimize the amount of fill dirt needed, and on another occasion Dillard suggested to appellee that the space between two of the foundation beams be widened for the purpose of strengthening the foundation. In addition, Dillard answered "yes" to questions on cross-examination inquiring whether he reserved the right to see that the work met with his "approval," and if "a two-by-four hadn't been put in there like it ought to have been put in there" he would have suggested or required that it be changed. That type of approval or supervision is not such control over the details of the work as will constitute evidence that an employee of a subcontractor has become the employee of the general contractor. It is nothing more than the general right of any contractor to see that the work of his subcontractors or their employees is of good quality and complies with the plans and specifications. *Continental Insurance Company v. Wolford,* supra; *Anchor Casualty Company v. Hartsfield,* supra; *Industrial Indemnity Exchange v. Southard,* supra; *Stimson v. Aetna Insurance Company,* 440 S.W.2d 108 (Tex.Civ.App. Dallas 1969, no writ); *Travelers Insurance Company v. Brown,* supra; *Traders & General Insurance Co. v. Ferris,* 312 S.W.2d 311 (Tex.Civ.App. Amarillo 1958, writ ref'd). Direction and control with respect to the character of materials and workmanship is entirely consistent with the relation of independent contractor. *Ewing v. Litzmann,* 188 S.W. 742 (Tex.Civ. App. Galveston 1916, writ ref'd); 30 Tex. Jur.2d, Independent Contractors, Sec. 7, p. 486. When the authorities speak of control over the details of the work, as distinguished from the end result, they mean the *physical conduct* of the workman in performing his work, such as when and where to begin and stop work, the regularity of hours and the amount of time spent on particular aspects of the work, the physical method or manner of accomplishing an end result, and control of the type of tools and appliances used to perform the work. Restatement (Second) of Agency, Sec. 220 (1958); 41 Am.Jur.2d, Independent Contractors, Secs. 8 and 9, pp. 751–756; 53 Am. Jur.2d, Master and Servant, Sec. 2, p. 83; Ibid, Sec. 4, p. 86. Compare *Continental Insurance Company v. Wolford,* supra. There is no evidence of any such control by Dillard over appellee, and there is no evidence of any of the other tests which may be relied upon to prove a master-servant relationship. There is likewise no evidence that appellee became the servant of Dillard under the borrowed servant doctrine. An employee in the general employment of one employer may be temporarily loaned to another so as to become a special employee of the second employer. *Hilgenberg v. Elam,* 145 Tex. 437, 198 S.W.2d 94 (1946); Restatement (Second) of Agency, Sec. 227 (1958). But he can become the servant of the second person only if there exists the same elements in relation to the second as would constitute him a servant of that person were he not originally the servant of the first. Restatement (Second) of Agency, Sec. 227 (1958). Furthermore, even though an employee of one may be subject to the direction of a temporary master, no new relationship of employment is created if, in following the directions of the temporary master, he is doing so merely in obedience to the direction of, and in the general performance of his duties to, his original employer. *Wise v. Texas Employers Insurance Association,* 402 S.W.2d 228 (Tex.Civ.App. Houston 1966, writ ref'd n. r. e.); *Dealers National Insurance Company v. Jackson,* 363 S.W.2d 297 (Tex.Civ.App. Beaumont 1962, writ ref'd n. r. e.).

Appellee urges that the testimony that Dillard loaned Moss an air compressor, a tractor and a transit for use on the Jones house job constitutes some evidence of a master-servant relationship between them or between Dillard and appellee. We do not agree. In explaining the loan of these items, Dillard testified that on numerous occasions he loaned his tools and appliances to Moss and others even when they were not performing services for him, as a courtesy to all those with whom he did business. Disregarding the explanation, if the fact that Dillard loaned Moss a tractor, transit and air compressor constitutes any evidence of a master-servant relationship in the context of this case, we consider it no more than a scintilla. Compare *Anchor Casualty Company v. Hartsfield,* supra.

There being no evidence of probative value that appellee was an employee of James Dillard, the rendition of a judgment in appellee's favor was error. The judgment is therefore reversed and judgment is here rendered that appellee take nothing.

IT IS SO ORDERED.