Anthony D. MEADOWS

v.

DICKSON WELDING, INC., et al.

Civ. A. No. 82–5687.

United States District Court, E.D. Louisiana.

Sept. 28, 1984.

L. O'Neal Williams, Jr., Williams, Williams & Montgomery, Poplarville, Miss., Young & Young, W.W. Young, III, New Orleans, La., for plaintiff.

Borrello & Huber, Victor A. Dubuclet, III, Metairie, La., for Liberty Mutual Ins. Co., intervenor.

Jones, Walker, Waecther, Poitevent, Carrere & Denegre, Stanhope B. Denegre, Robert M. Contois, George R. Alvey, Jr., New Orleans, La., for McMoran Oil & Gas Co.

Christovich & Kearney, J. Walter Ward, New Orleans, La., for Dickson Welding, Inc.

## ORDER AND REASONS

CHARLES SCHWARTZ, Jr., District Judge.

This matter came before the court on the motion of defendant, McMoran Oil & Gas Co. (McMoran), for summary judgment against plaintiff, Anthony D. Meadows. Following oral argument, and considering the memoranda, the record and the law applicable to this case, the Court denied the motion for the following reasons.

In this diversity action, the plaintiff seeks damages for an injury which he allegedly sustained on January 13, 1982, while he was working on a fixed offshore platform owned by McMoran and located on the Outer Continental Shelf, outside the territorial waters of Texas. Certain facts are apparently uncontested. Plaintiff was employed by Dickson Welding, Inc. (Dickson Welding) as a welder's helper. At the time of the incident in suit, the McMoran platform was in the construction/erection stage. The plaintiff and his fellow employees were working in the area of the modular unit which was being erected on the substructure or "jacket" of the platform. McMoran had leased the mineral rights from the United States Department of Interior for the area where the platform was located for the purpose of exploring for, developing and producing minerals from the seabed and subsoil of the area. McMoran had contracted with Dickson Welding to perform construction/erection and welding on the platform.

Defendant moved for summary judgment on the grounds that it is immune from tort liability, pursuant to §§ 4(a) and 5(a) of the Longshoremen's and Harbor Workers' Compensation Act (LHWCA)[1] and under

1. 33 U.S.C. § 904(a) provides:

"Every employer shall be liable for and shall

the Supreme Court's decision in *Washington Metropolitan Area Transit Authority v. Johnson*, — U.S. ——, 104 S.Ct. 2827, 81 L.Ed.2d 768 (1984). Summarily, in the *Washington Transit* case, the Supreme Court held that Congress intended to include general contractors, as well as direct employers, within § 5(a)'s extension of immunity from tort liability. The Court further held that such immunity will be extended to a general contractor, as long as it does not fail to meet its obligation to secure compensation for subcontractor employees under § 4(a). The Court stated:

"Immunity is not cast as a reward for employers that secure compensation; rather, loss of immunity is levied as a penalty on those that neglect to meet their statutory obligation.

\*　\*　\*　\*　\*　\*

We conclude, therefore, that §§ 4(a) and 5(a) of the LHWCA render a general contractor immune from tort liability provided the contractor has not failed to honor its statutory duty to secure compensation for subcontractor employees when the subcontractor itself has not secured such compensation. So long as general contractors have not defaulted on this statutory obligation to secure back-up compensation for subcontractor employees, they qualify for § 5(a)'s grant of immunity." —— U.S. at ——, 104 S.Ct. at 2836.

■ Plaintiff opposes defendant's motion on the grounds, *inter alia*, that defendant has not shown by affidavit, or otherwise, that it acquired wraparound insurance coverage to provide compensation for employees of Dickson Welding. However, the parties do not dispute that LHWCA benefits have been paid to plaintiff on behalf of Dickson Welding. It has not been shown that McMoran failed to fulfill its statutory obligation such as to foreclose immunity; specifically, plaintiff has not shown that McMoran failed to secure compensation for subcontractor employees when the subcontractor itself has not secured such compensation. Plaintiff's argument in this regard is without merit.

■ Nonetheless, defendant's assertion of immunity must fail on summary judgment in view of a threshold issue of material fact which is necessary to sustaining this defense. We read *Washington Transit* as construing the LHWCA to give rise to tort immunity only where it is shown that the party asserting employer status is, in fact, a general contractor in relation to the circumstances of the case. The Supreme Court clearly recognized that a party's status as "general contractor" necessitates a factual inquiry; the Court noted:

"Whether WMATA serves as the general contractor of the entire Metro construction project turns on a factual inquiry into WMATA's responsibility for supervising project construction. Because the lower courts' findings have ample support in the record, ... we accept their conclusion that WMATA is a general contractor for purposes of § 4(a) of the LHWCA. [citation omitted]." —— U.S. at ——, fn. 5, 104 S.Ct. at 2830, fn. 5.

■ The LHWCA does not provide a specific definition of the term general contractor. Thus, in this personal injury action arising on the Outer Continental Shelf, the law of the adjacent state, Texas, applies as surrogate federal law to the determination of whether McMoran was a general contractor in relation to Dickson Welding. 43 U.S.C. § 1333(a)(2); *Rodrigue v. Aetna Casualty & Surety Company*, 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969). Borrowing from the Texas worker's compensation laws, the ultimate and

---

secure the payment to his employees of the compensation payable under sections 7, 8, 9. In the case of an employer who is a subcontractor, the contractor shall be liable for and shall secure the payment of such compensation to employees of the subcontractor unless the subcontractor has secured such payment."

33 U.S.C. § 905(a) provides, in pertinent part:

"The liability of an employer prescribed in section 4 shall be exclusive and in place of all other liability of such employer to the employee ..., except that if an employer fails to secure payment of compensation as required by this Act, an injured employee ... may elect to claim compensation under this Act, or to maintain an action at law or in admiralty for damages ..."

decisive test is whether McMoran had the right to control details of the Dickson Welding employees' performance. *United States Fidelity & Guaranty Company v. Goodson,* 568 S.W.2d 443 (Tex.App.1978).[2] Although McMoran has produced evidence concerning its responsibilities and functions with regard to the platform in question, the evidence of record does not support a summary judgment in its favor on the issue of whether it was a general contractor such as to entitle it to tort immunity under § 4(a) of the LHWCA. The facts asserted by McMoran to be uncontested do not sufficiently support its position in this regard under an accepted legal definition of the term general contractor.

Furthermore, our review of the contractual agreement between McMoran and Dickson Welding leads to the inevitable conclusion that there is a factual issue as to whether McMoran was a general contractor in relation to Dickson Welding or whether its capacity was merely that of platform owner/operator contracting for services performed thereon. The written contract describes McMoran as "owner" and Dickson Welding as "contractor". It contains provisions relative to "subcontractors" employed by Dickson Welding. The contract further provides as follows:

> "In its performance hereunder, the CONTRACTOR is an independent contractor, the OWNER being interested only in the results obtained. The CONTRACTOR acknowledges that neither he nor any of his employees are employees of the OWNER."

This language casts doubt upon McMoran's entitlement to the benefit of tort immunity as a general contractor of Dickson Welding.

Accordingly, and for the foregoing reasons,

IT IS ORDERED that the motion of defendant for summary judgment be and it is hereby DENIED.

2. Other pertinent considerations are set forth in *Goodson,* 568 S.W.2d at 446.