**Linda H. STOKER, Appellant,**

v.

**FURR'S, INC., Appellee.**

**No. 08–90–00293–CV.**

Court of Appeals of Texas,
El Paso.

July 24, 1991.

Rehearing Overruled Sept. 4, 1991.

Joel Fry, Moreno & Fry, El Paso, for appellant.

Laura Franze, Gardere & Wynne, Dallas, Charles C. High, Kemp, Smith, Duncan & Hammond, El Paso, D. Michelle McCullough, Gardere & Wynne, Dallas, for appellee.

Before FULLER, WOODARD and KOEHLER, JJ.

## OPINION

KOEHLER, Justice.

In an employment discrimination suit brought under the Texas Workers' Compensation Act against a prospective employer, the employer was granted a summary judgment. The question here

presented is whether a prospective employer can refuse under Tex.Rev.Civ.Stat.Ann. art. 8307c (Vernon Pamphlet 1991) to employ a person for the reason that she has a pending compensation claim. We conclude that it can, and we affirm the judgment of the trial court.

Linda H. Stoker (Stoker), Appellant, was employed by Safeway Stores, Inc. as a price checker from September 12, 1966 through November 7, 1987. In 1986, Stoker sustained a work related injury. She received worker's compensation for the injury, but her claim against Safeway remained pending. When Furr's, Inc. purchased Safeway's stores in El Paso effective November 7, 1987, Furr's interviewed Safeway employees for continuing employment. On November 2, Stoker was interviewed by Furr's for continuing in the same job. She alleges that on the same day, Furr's offered her a job and she accepted. She further alleges that on November 6, before she had started to work, she was terminated by Furr's partly because of her pending claim against Safeway.

Furr's position was that Stoker was not hired because she did not have a medical release and would not be able to perform the job of price checker if she could not bend, lift and stoop. It also contends that the reasons she was not hired were not at issue in the motion for summary judgment. It argues that because Stoker was never hired, she failed to state a claim under Article 8307c, which applies only to employees.

In reviewing a summary judgment appeal, this Court must determine whether the successful movant in the trial court carried its burden of showing that there is no genuine issue of a material fact and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Company, Inc.*, 690 S.W.2d 546, 548 (Tex.1985). In deciding whether or not there is a disputed fact issue precluding summary judgment, evidence favorable to the nonmovant is to be taken as true, and in that connection, every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in his favor. *Nixon*, 690 S.W.2d at 548–49. If the defendant is the movant and he submits summary judgment evidence disproving at least one element of the plaintiff's case, then summary judgment should be granted. *Bradley v. Quality Service Tank Lines*, 659 S.W.2d 33, 34 (Tex.1983); *Rayos v. Chrysler Credit Corporation*, 683 S.W.2d 546, 547 (Tex.App.—El Paso 1985, no writ).

We will consider first Stoker's second point of error, wherein she asserts that the evidence raised a material fact issue concerning the existence of an employer/employee relationship at the time she was informed by Furr's that it would not hire her. In her affidavit filed in opposition to Furr's Motion for Summary Judgment, she stated:

On November 2, 1987, I was interviewed for a job position with Furr's, Inc. at the El Paso division offices of Safeway Stores, Inc. At that time, I was employed by Safeway Stores, Inc. which was being purchased (in El Paso) by Furr's, Inc. This interview was performed by Mr. James Hutton, employee relations manager for Safeway, who was acting on behalf of Furr's, Inc. At the interview, Mr. Hutton stated that I was being offered a job with Furr's. Mr. Hutton proceeded to outline the job benefits.

After Mr. Hutton had fully described the job offer I accepted employment with Furr's, Inc. I mentioned my pending worker's compensation claim after I accepted the offer.

At that point, Mr. Hutton questioned me concerning the worker's compensation claim and told me that he would have to contact Furr's concerning my worker's compensation claim.

On November 7, 1987, Mr. Hutton informed me I no longer had a job with Furr's.

An "employee" is defined by the Workers' Compensation Act to "mean every person in the service of another under any contract of hire, expressed or implied, oral or written,...." Tex.Rev.Civ.Stat.Ann. art.

8309, § 1 (Vernon 1967). A person who has contracted with an employer to begin work at some future time is not an employee until that time because she is not yet in the service of the employer or on the employer's payroll. To be an employee, there must be not only a contract of hire, express or implied, *Carnes v. Transport Ins. Co.*, 615 S.W.2d 909, 911 (Tex.Civ.App.—El Paso 1981, writ ref'd n.r.e.), but the person must be in the service of his employer, that is, must have begun the work of his employer. It is undisputed that Furr's was to take over the Safeway stores on November 7, 1987 and that Stoker would not and could not begin to work for Furr's until that time. Had Stoker been told that she was hired to begin work a year later on November 7, 1988, could she seriously contend that she was an employee of Furr's during the year interval? We think not.

Stoker cites *Lotspeich v. Chance Vought Aircraft*, 369 S.W.2d 705 (Tex.Civ.App.—Dallas 1963, writ ref'd n.r.e.) for the proposition that where there is a contract of employment, it is not necessary for the person to perform services for the employer in order to be classified as an "employee" under the Workers' Compensation Act. In *Lotspeich*, the plaintiff was required by the company to take a pre-employment physical examination within three days preceding going to work. She was examined by company doctors and nurses on company premises on the same day she went to work. She later sued the company and a company doctor for failure to discover and inform her that she had tuberculosis. The Court of Appeals in its affirmance of a summary judgment for the company, held that she was an employee at the time of examination and therefore, the Workmen's Compensation Law provided the exclusive remedy. The Court also said that even if her cause of action arose "at the very time of her physical examination, and before she actually began her work for the Company," she was an employee, subject to and covered by the Workmen's Compensation Law "while being given the physical examination." *Lotspeich* differs markedly for obvious reasons from the factual situation in this case, where the applicant for employment, according to her affidavit and answer to interrogatories, was on November 2, 1987 offered a job, which she immediately accepted, and the offer was withdrawn all in the same interview.

Stoker also claims the existence of an employer/employee relationship by virtue of Furr's "right to control" her from the moment she accepted the alleged job offer on November 2 ("At the time that I accepted the job offer through Mr. Hutton, I considered myself an employee of Furr's and subject to Furr's control."). That she considered herself to be subject to Furr's control is not supported by any other summary judgment evidence, nor would Furr's have any right to control her in the specifics of her performance until she had been put on the payroll and commenced work.

Moreover, when courts speak of the "right to control" a person in the context of a worker's compensation employment question, they mean the right to control the details of the work, as opposed to the end results, which becomes important in determining for which one of several possible employers a worker was working at the time he was injured. *Mayo v. Southern Farm Bureau Casualty Insurance Company*, 688 S.W.2d 241, 243 (Tex.App.—Amarillo 1985, writ ref'd n.r.e.); *United States Fidelity & Guaranty Company v. Goodson*, 568 S.W.2d 443, 447 (Tex.Civ.App.—Texarkana 1978, writ ref'd n.r.e.). In this case, there is no question that Furr's would have had the right to control Stoker in the details of her performance once she had commenced working for Furr's on November 7, but on November 2, Furr's had no control over the specifics of her work because she was not yet working for it.

We conclude and hold as a matter of law that Stoker, who was allegedly hired on November 2, 1987 to begin work on November 7, was not an employee of Furr's on November 2 within the meaning of the Texas Workers' Compensation Act because she had performed no work for Furr's and was not yet in its service. She may have a cause of action for breach of contract but not as an employee for wrongful discharge

or other act of discrimination under Article 8307c of the Texas Workers' Compensation Act. Point of Error No. Two is overruled.

■ Turning now to her first point of error, Stoker contends that the trial court erred in granting a summary judgment because Article 8307c does not require a present employer/employee relationship. She contends that a prospective employer is guilty of discrimination under the statute if it refuses to employ any person for the reason that the latter has filed a claim or has instituted a proceeding under the Texas Workers' Compensation Act. Article 8307c provides:

> Section 1. No person may discharge or in any other manner discriminate against any employee because the employee has in good faith filed a claim, hired a lawyer to represent him in a claim, instituted, or caused to be instituted, in good faith, any proceeding under the Texas Workmen's Compensation Act, . . . ."

Stoker argues that the word "person" used in the statute means any person including a prospective as well as a current employer, since a contrary interpretation would violate the rules of statutory construction and ignore the requirement that Workers' Compensation Act should be liberally construed in favor of the claimant. *Ward v. Charter Oak Fire Insurance Company,* 579 S.W.2d 909, 910 (Tex.1979). Furr's, on the other hand, insists that "person" is necessarily limited to a present employer because the "employee" (referred to in the statute as the person discriminated against), makes sense only in a current employer/employee relationship, that is, the employee who claims discrimination is only an employee as to the current employer who has discharged or in some other manner discriminated against him. *Smith v. Coffee's Shop for Boys and Men, Inc.,* 536 S.W.2d 83 (Tex.Civ.App.—Amarillo 1976, no writ).

■ When the court is confronted with a question of statutory construction, it must first determine whether the statute is ambiguous. *Cail v. Service Motors, Inc.,* 660 S.W.2d 814, 815 (Tex.1983). If the meaning of the statute is clear and unam-

biguous, extrinsic aids and rules of construction are inappropriate, and the statute should be given its common, everyday meaning. *Cail,* 660 S.W.2d at 815. The contentions of the parties in this case amount to a claim of ambiguity. When an apparent ambiguity exists, the court is to give the statute a reasonable construction in keeping with the legislative intent. *City of Mason v. West Texas Utilities Co.,* 150 Tex. 18, 237 S.W.2d 273, 278 (1951). That intention should be determined from the entire act, not from isolated portions thereof. *Mason,* 237 S.W.2d at 278.

Article 8307c was enacted by the 62nd Texas Legislature, effective in 1971, as a part of the Workers' Compensation Act and not as a general civil rights statute. That Act was enacted primarily for the purpose of benefitting and protecting employees who are injured in the course of their employment. *Industrial Accident Board v. Parker,* 348 S.W.2d 188, 191 (Tex.Civ. App.—Texarkana 1960, writ ref'd n.r.e.).

We must assume that the legislature intended that the word "employee" as used in that article have the same meaning as it is defined in Article 8309, § 1 of the Act: "every person in the service of another under any contract of hire, . . . ." Article 8307c begins: "No person may discharge or in any other manner discriminate against any employee. . . ." A person could not discharge an employee unless that person was an employer. It is inconceivable that the legislature intended "person" to mean an "employer" as applied to discharge but when it came to discriminating in any other manner, it intended "person" to mean "any person" regardless of whether there existed an employer/employee relationship. Had the legislature intended to create a cause of action against any person who in any manner discriminated against any other person because the latter had filed a compensation claim, it could have easily said so.

On the assumption that Stoker was not yet an employee of Furr's at the time Stoker was informed that it would not employ her, Furr's would not in any manner be discriminating against an employee by re-

**724**

fusing to hire her, whatever the reason. *Smith,* 536 S.W.2d at 84, 85. In *Smith,* the plaintiff was an employee who had filed a compensation claim, had settled it and was cleared by her doctor to return to work. She was asked by her employer to return to work immediately, but she decided instead to take a two week vacation. When she requested permission to return to work, her position had been filled and her employer refused to re-employ her. Conceding that her wrongful discharge claim was barred by limitations, she asserted that her former employer was discriminating against her ("in any other manner") by its refusal to re-employ her. In response to that assertion, the Amarillo Court held that the discriminatory "acts statutorily condemned are those occurring during the employment, and not afterwards." *Smith* was decided in 1976. The Legislature in 1989 enacted a new Workmen's Compensation Act, adopting Article 8307c without substantial change. "The rule is well settled that when a statute is re-enacted without material change, it is presumed that the legislature knew and adopted the interpretation placed on the original act and intended the new enactment to receive the same construction." *First Employees Insurance Company v. Skinner,* 646 S.W.2d 170, 172 (Tex.1983).

Neither *Hodge v. BSB Investments, Inc.,* 783 S.W.2d 310 (Tex.App.—Dallas 1990, writ denied) nor *Industrial Foundation of the South v. Texas Industrial Accident Board,* 540 S.W.2d 668 (Tex.1976), cited by Stoker in support of her position, have any application to the question of whether a nonemployee can maintain a suit under Article 8307c against a prospective employer.

We hold that neither a wrongful discharge suit nor an employment discrimination suit can be brought under Article 8307c in the absence of an existing employer/employee relationship. Point of Error No. One is overruled.

Judgment of the trial court is affirmed.